UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ARTIS DYER, | ) | 1:08-CV-01881 AWI JMD HC |
| | ) | |
| Petitioner, | ) | FINDINGS AND RECOMMENDATIONS |
| | ) | REGARDING PETITION FOR WRIT OF |
| v. | ) | HABEAS CORPUS |
| | ) | |
| KEN CLARK, | ) | |
| | ) | OBJECTIONS DUE WITHIN THIRTY (30) |
| Respondent. | ) | DAYS |
| | ) | |

Artis Dyer ("Petitioner") is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## **PROCEDURAL HISTORY**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a 1990 conviction in the Los Angeles County Superior Court. Petitioner was convicted of second degree murder with a firearm sentence enhancement,[1] resulting in a sentence of seventeen years to life. This action does not challenging Petitioner's conviction; rather, Petitioner challenges the denial of his parole by the California Board of Parole Hearings (the "Board"), whom he appeared before in February 2007. Petitioner contends that the Board's denial violated his constitutional rights.

Petitioner subsequently filed a petition for writ of habeas corpus with the Los Angeles County Superior Court challenging the Board's denial of parole. (*See* Resp't Answer Ex. 1). The Los Angeles County Superior Court issued a reasoned opinion denying the petition. (*See* Resp't Answer Ex. 2).

---

[1] Petitioner was also sentenced to a two year consecutive prison term for a driving under the influence charge pertaining to an unrelated incident four days before the commitment offense.

Petitioner also filed petitions for writ of habeas corpus with the California Court of Appeal and the California Supreme Court. (*See* Answer Resp't Exs. 3, 4). The California Court of Appeal and Supreme Court issued summary denials of the petitions. (*See* Resp't Answer Exs. 5, 6).

On November 24, 2008, Petitioner filed the instant federal petition for writ of habeas corpus in the Sacramento division of the Eastern District of California. The petition was transferred to this Court on December 8, 2008. (Order Intradistrict Transfer, ECF No. 3).

Respondent filed a response to the petition on May 20, 2009. Respondent admits that Petitioner has exhausted his state remedies and that the petition is not subject to any other procedural bars. (Answer at 2). Petitioner filed a traverse on June 23, 2009.

## **FACTUAL BACKGROUND**

California regulations mandate that the Board consider the circumstances of the commitment offense in determining parole suitability. *See* Cal. Code Regs. tit. 15, § 2402(c)(1). As the facts of the commitment offense were considered by both the Board and the State court, they are relevant to the Court's inquiry into whether the State court's decision upholding the Board's denial of parole was objectively unreasonable. The Board incorporated into the record a summary of the offense as contained in the probation officer's report. (Pet. Ex. A, Tr. Parole Hearing, at 11-13.) The record of the hearing revealed that the murder victim was Petitioner's cousin, whom he ha been very close to. (Id. at 14.) Petitioner, his brother, and the victim's brother, went to the victim's residence with the intention of hanging out with the victim. (Id. at 15-16.) Petitioner had been drinking prior to arriving at his cousin's home. (Id. at 24.) Petitioner and the victim became embroiled in an argument at which point Petitioner pulled out a gun and fired a shot into the air. (Id. at 15-17.) When Petitioner pointed the gun at the victim, the victim commented that Petitioner would not be doing this if Petitioner's father was there or that Petitioner did not have the heart to do this, to which Petitioner responded by firing three shots at the victim. (Id. at 22.) Petitioner and his brother then fled the scene. (Id. at 23.) Petitioner was twenty years old at the time of the commitment offense.

\\\
\\\
\\\

**DISCUSSION**

**I.     Jurisdiction**

A person in custody pursuant to the judgment of a State court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution and Petitioner is currently incarcerated at Corcoran Substance Abuse Treatment Facility, which is located in Kings County. As Kings County falls within this judicial district, 28 U.S.C. § 84(b), the Court has jurisdiction over Petitioner's application for writ of habeas corpus. *See* 28 U.S.C. § 2241(d) (vesting concurrent jurisdiction over application for writ of habeas corpus to the district court where the petitioner is currently in custody or the district court in which a State court convicted and sentenced Petitioner if the State "contains two or more Federal judicial districts").

**II.    ADEPA Standard of Review**

On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment. *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of the AEDPA and is consequently governed by its provisions. *See Lockyer v. Andrade*, 538 U.S. 63, 70 (2003). Thus, the instant petition "may be granted only if [Petitioner] demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1))*, overruled in part on other grounds*, *Hayward v. Marshall*, 603 F.3d 546, 555 (9th Cir. 2010) (en banc); *see Lockyer*, 538 U.S. at 70-71.

Title 28 of the United States Code, section 2254 remains the exclusive vehicle for Petitioner's habeas petition as Petitioner is in the custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. *See Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) *overruled in part on other grounds*,

*Hayward*, 603 F.3d at 555.  As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id*. (quoting *Williams*, 592 U.S. at 412).  "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id*.  Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Id.* at 72, (quoting 28 U.S.C. § 2254(d)(1)).  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72.  "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.  "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the State court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. *Clark v. Murphy*, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While *only* the Supreme Court's precedents are binding on the Arizona court, and only those precedents need be reasonably applied, we may look for guidance to circuit precedents"); *Duhaime v. Ducharme*, 200

F.3d 597, 600-01 (9th Cir. 1999) ("because of the 1996 AEDPA amendments, it can no longer reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on a federal Constitutional issue . . . This does not mean that Ninth Circuit caselaw is never relevant to a habeas case after AEDPA. Our cases may be persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what law is 'clearly established'"). Furthermore, the AEDPA requires that the Court give considerable deference to state court decisions. The state court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and a federal habeas court is bound by a state's interpretation of its own laws, *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002).

The initial step in applying AEDPA's standards is to "identify the state court decision that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last reasoned decision. *Id*. (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the presumption that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order). Thus, a federal habeas court looks through ambiguous or unexplained state court decisions to the last reasoned decision to determine whether that decision was contrary to or an unreasonable application of clearly established federal law. *Bailey v. Rae*, 339 F.3d 1107, 1112-1113 (9th Cir. 2003). Here, the Los Angeles County Superior Court, the California Court of Appeal, and the California Supreme Court reached the merits of Petitioner's claims. As both the California Court of Appeal and the California Supreme Court summarily denied Petitioner's claims, the Court looks through those decisions to the last reasoned decision; namely, that of the Los Angeles County Superior Court. *See Nunnemaker*, 501 U.S. at 804.

### III.     Review of Petitioner's Claim

The petition for writ of habeas corpus alleges that Petitioner's rights under the Due Process Clause were violated by the Board's denial of parole. Specifically, Petitioner argues that there was no evidence supporting the factors cited by board in their denial. (Pet. Mem. P. & A. at 5-13.) Additionally, Petitioner contends that there does not exist a nexus between those factors cited by the Board and Petitioner's risk of danger to the public safety. (Id. at 13-19.) Lastly, Petitioner argues

1 that a denial of parole based on immutable factors violates his due process rights (Id. at 19-21.)

### A.  Legal Standard for Denial of Parole

The Court analyzes Petitioner's due process claims in two steps: "the first asks whether there exist a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Sass*, 461 F.3d at 1127. The United States Constitution does not, by itself, create a protected liberty interest in a parole date. *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981).  Respondent argues that Petitioner does not have a federally protected liberty interest in parole. (Resp't Answer at 4.)  The Ninth Circuit Court of Appeals has recognized that "[i]f there is any right to be release on parole, or to release in the absence of some evidence of future dangerousness, it has to arise from substantive state law creating a right to release." *Hayward*, 603 F.3d at 555.  The Ninth Circuit further recognized that "[t]here is no general federal constitutional 'some evidence' requirement for denial of parole, in the absence of state law creating an enforceable right to parole." *Id*. at 559.  The *Hayward* court's finding, that there exists no free standing federal due process right to parole or the federal right to some evidence of current dangerousness, contained the consistent and continual caveat that state law may in fact give rise to federal protection for those rights.  As the Ninth Circuit later reiterated, "state created rights may give rise to liberty interests that may be enforced as a matter of federal law." *Pearson v. Muntz*, 606 F.3d 606, 609 (9th Cir. 2010) (per curiam) (citing *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)).   The *Pearson* court found that, "*Hayward* necessarily held that compliance with state requirement is mandated by federal law, specifically the Due Process Clause" as "[t]he principle that state law gives rise to liberty interests that may be enforced as a matter of federal law is long-established." *Id.*

The next question is whether California's parole scheme gives rise to a liberty interest enforced as a matter of federal law.  The Ninth Circuit has definitively concluded that "California has created a parole system that independently requires the enforcement of certain procedural and substantive rights, including the right to parole absent 'some evidence' of current dangerousness." *Id*. at 611 (citing *Hayward*, 603 F.3d at 562); *see also Cooke v. Solis*, 606 F.3d 1206, 1213 (9th Cir. 2010) (noting that "California's 'some evidence' requirement is a component of the liberty interest

created by the parole system of that state"). Consequently, the inquiry that a federal habeas court must undertake in determining whether the denial of parole comports with the requirement of federal due process is "whether the California judicial decision approving the governor's [or parole board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'" *Hayward*, 603 F.3d at 563 (quoting 28 U.S.C. § 2254(d)(1)-(2)) (footnotes omitted).

### *A.     State Court Decision*

Thus, the Court now examines whether the Los Angeles County Superior Court's decision was an unreasonable application of the California some evidence standard. The Superior Court noted that the Board had relied primarily on the commitment offense to deny Petitioner parole. (Resp't Answer Ex. 2). The Superior Court found that there was some evidence to support the Board's finding that the motive for the crime was trivial in relation to the offense. (Id. at 2.) Lastly, the Court found that the Board had additionally considered Petitioner's previous criminal record and his serious disciplinary infraction for inciting violence. (Id.)

The Court finds the analysis undertaken by the Los Angeles County Superior Court to be an unreasonable application of the California some evidence standard. As articulated by the Ninth Circuit Court of Appeals:

> Under California law, "the paramount consideration for both the Board and the Governor" must be "whether the inmate currently poses a threat to public safety and thus may not be released on parole,"[citation], and "the facts relied upon by the Board or the Governor [must] support the ultimate decision that the inmate remains a threat to public safety.

*Cooke*, 606 F.3d at 1214 (quoting *In re Lawrence*, 44 Cal. 4th 1181, 1210, 1213 (2008)). In *Lawrence*, the California Supreme Court held that, "[t]he relevant determination for the Board and the Governor is, and always has been, an individualized assessment of the continuing danger and risk to public safety posed by the inmate." *In re Lawrence*, 44 Cal. 4th. at 1227; *see also* Cal. Code Regs. tit. 15, § 2402(a) ("[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole). "[A] reviewing court must consider 'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the

Governor.'" *Cooke*, 606 F.3d at 1214 (emphasis in original) (quoting *In re Lawrence*, 44 Cal. 4th at 1221).

Here, the Superior Court's decision mentions the some evidence standard only once, namely when it found that as there was some evidence to support the trivial nature of the motive. The Superior Court fails to explain how the trivial nature of the motive is probative toward a determination of Petitioner's current dangerousness. As noted by the California Supreme Court in *Lawrence*, "mere recitation of the circumstances of the commitment offense, absent articulation of a rational nexus between those facts and current dangerousness, fails to provide the required "modicum of evidence" of unsuitability." *In re Lawrence*, 44 Cal. 4th at 1227. The Superior Court's failure to explain how any of the evidence relied upon by the Board is probative toward current dangerousness is an objectively unreasonable application of the California some evidence standard.

### B.  Parole Board Decision

The finding that the State court's decision was objectively unreasonable does not end a federal habeas court's inquiry. *See Butler v. Curry*, 528 F.3d 624, 641 (9th Cir. 2008) (citing 28 U.S.C. § 2241(c)(3) in noting that a federal habeas court's finding that state court's decision is contrary to established federal law does not end that court's inquiry). A federal habeas court's "power to grant the writ of habeas corpus to a state inmate depends on his actually being 'in custody in violation of the Constitution or laws ... of the United States.'" *Id*. Thus, Petitioner is only entitled to habeas corpus relief if his due process rights were violated by a lack of evidence supporting the Board's denial of parole. In its decision denying Petitioner parole, the Board listed several factors, including but not limited to the commitment offense, Petitioner's criminal misconduct prior to incarceration, Petitioner's unstable social history, Petitioner's disciplinary violation, and Petitioner's psychological evaluation. (Tr. Parole Hearing at 102-107.) The Court examines these factors to see if they contain any evidence to support a finding that Petitioner is currently dangerous.

\\\

\\\

\\\

### 1. *Commitment Offense*

The Board relied primarily on the commitment offense in finding Petitioner posed a current risk of danger to the public safety. (Id. at 102-104.) The California Supreme Court has found that while "the Board or the Governor may base a denial-of-parole decision upon the circumstances of the offense, or upon other immutable facts such as an inmate's criminal history . . . some evidence will support such reliance only if those facts support the ultimate conclusion that an inmate continues to pose an unreasonable risk to public safety." *In re Lawrence*, 44 Cal. 4th at 1221. The commitment offense occurred in May 1989 and Petitioner appeared before the Board in February 2007; thus, almost eighteen years had passed between the time of the offense and the hearing. Additionally, the intervening eighteen years had witnessed Petitioner's participation in self-help, acquisition of various trades, and remain relatively discipline free. (Tr. Parole Hearing at 41-49.) In light of these circumstances, the Court finds that the "offense is both temporally remote and mitigated by circumstances indicating the conduct is unlikely to recur," and is consequently not probative of his current dangerousness. *In re Lawrence*, 44 Cal. 4th at 1191.

### 2. *Prior Record*

Here, the Board relied on Petitioner's pre-incarceration criminal history to deny him parole. (Tr. Parole Hearing at 104.) Pursuant to California regulations, a previous record of violence is a circumstance tending to show parole unsuitability. *See* Cal. Code Regs. tit. 15, § 2402(c)(2). The record reveals that Petitioner was either arrested or convicted of robbery in 1982, grand theft in 1986, and had four driving while under the influences incidents in April, May, and June of 1987 and then in May 1989. (Tr. Parole Hearing at 26-29.) The Court finds reliance on Petitioner's prior criminal misconduct erroneous for the same reasons as stated above regarding the commitment offense. The last misconduct occurred almost eighteen years prior to the parole hearing. There is nothing in the record to suggest that these prior incidents of criminal misconduct remain relevant toward the inquiry of whether Petitioner is currently dangerous.

\\\
\\\
\\\

### 3. *Unstable Social History*

California regulations labels an unstable social history as a factor tending to show unsuitability for parole. The regulations define an unstable social history as "[t]he prisoner has a history of unstable or tumultuous relationships with others." Cal. Code Regs. tit. 15, § 2402(c)(3). As noted by the California courts, "an inmate's unstable social history, like his commitment offense, is an 'immutable' fact, and thus insufficient by itself to prove unsuitability." *In re Shipman*, 110 Cal. Rptr. 3d 326, 335 (Cal. Ct. App. 2010). In noting that Petitioner had an unstable social history, the Board stated:

> I also note that you have an unstable social history, again, go [sic] not graduate, was placed at the Lindwood Adult School where you did eventually obtain your high school diploma, indications that you were sexually active at an early age. You fathered a child at 15 years old and that you were abusing alcohol and marijuana at that particular time of your life.

(Tr. Parole Hearing at 105.)

Initially the Court questions the Board's findings as Petitioner's attendance of an adult continuation school instead of highschool does not evidence an "unstable or tumultuous relationship with others." Cal. Code Regs. tit. 15, § 2402(c)(3). The same criticism can be leveled at Petitioner's early sexual development and fatherhood as there is no suggestion that Petitioner had an unstable or tumultuous relationship with either the child he fathered or the mother of the child. More importantly, though, the Board's discussion of Petitioner's unstable social history reveals that all the evidence pertains to Petitioner's past conduct. The Board failed to identify anything that would make this factor relevant to a discussion of whether Petitioner poses a current risk of danger to the public.

### 4. *Disciplinary Violation*

The Board noted that Petitioner had one serious disciplinary violation in 1993 for inciting violence. (Tr. Parole Hearing at 48-49). It was this disciplinary violation that was cited by the Board in its decision. (Id. at 106.) California regulations lists institutional behavior as one of the factors the Board considers in determining whether the prisoner poses a current risk of danger to the public safety. Institutional behavior, defined as "[t]he prisoner has engaged in serious misconduct in prison or jail," is a circumstance tending to show parole unsuitability. Cal. Code Regs. tit. 15, § 2402(c)(6).

However, the probative value of this disciplinary infraction is undercut by the length of time that has accrued between the violation and the hearing. Fourteen years had passed from the time in which Petitioner engaged in serious misconduct to the hearing. The Ninth Circuit found that two disciplinary infractions having occurred nearly a decade prior to the parole hearing could not reasonably be viewed as evidence that the habeas petitioner was a current risk to public safety. *Cooke*, 606 F.3d at 1215. Likewise, the Court does not find it reasonable to use a disciplinary violation that occurred almost fifteen years prior as evidence that Petitioner poses a current risk of danger to the public safety.

### 5. *Psychological Report*

The Board also cited the psychological report in its decision denying Petitioner parole. (Tr. Parole Hearing at 106-107.) The psychological report found that Petitioner posed a moderate risk of danger in a controlled setting. (Id. at 59.) The report concluded that, "when compared to the average citizen in the community, Mr. Dyer represents [an] average risk of dangerousness if released to the community." (Pet. Ex. C, Psychological Report of August 17, 2006, at 6.) The Court finds the Board's reliance on this factor to be erroneous. Initially, the Court notes that relevant inquiry under California regulations is whether the inmate poses an *unreasonable* risk of danger to the public safety. The Court does not find that the report's assessment of Petitioner as an average risk when compared to the average citizen sufficient to support the conclusion that Petitioner is an unreasonable risk. This is especially true when read in conjunction with the psychological report's closing paragraph, stating:

> It is very likely that Mr. Dyer will be able to maintain his personal gains as long as he remains alcohol free, complete his educational goals, and continue to remain disciplinary free. *If released, it is highly unlikely that he would violate his parole conditions and resume his criminal life style*. He appears to have matured and has benefitted significantly from his continued involvement in the programs that has enriched his life and his efforts to change his behavior for the better. He is likely to exercise sound judgement and carefully plan his actions before resorting to impulsive means to resolve his conflict.

(Id. at 7) (emphasis added).

Consequently, the Court finds no evidence in the psychological report alone to support a finding that Petitioner is currently dangerous.

### 6. *Participation In Alcoholics Anonymous*

The psychologist opined that a significant risk factor for Petitioner was a relapse or return to alcohol abuse. Some may argue that this, combined with Petitioner's lack of participation in Alcoholics Anonymous, may constitute some evidence of current dangerousness. (*See* Tr. Parole Hearing at 45.) However, as explained by Petitioner, his lack of participation in Alcoholics Anonymous is not voluntary as the program is unavailable to him. The Ninth Circle in *Pirtle* was confronted with a similar situation, namely an inmate whose commitment offense was related to the use of alcohol but who was unwilling to attend Alcoholics Anonymous because of his religious beliefs. *Pirtle*, __ F.3d __, 2010 WL 2732888, at * 6-7. The Ninth Circuit found that this lack of participation in Alcoholics Anonymous does not constitute evidence that the inmate would be unable or unwilling to manage his alcohol problem effectively upon release in light of the inmate's self-awareness regarding his alcohol problem and the psychological report diagnosis that he is in remission from alcoholism. Likewise, the Court does not consider Petitioner's lack of participation in Alcoholics Anonymous as evidence that he would return to alcohol if released and thus is not probative of his current dangerousness. As Petitioner's psychological evaluation stated, "[Petitioner] has actively participated in numerous AA groups, as well as NA groups and has expressed a desire to continue working on his sobriety once released from prison. ¶ Inmate Dyer is also a participant in the Walden House substance abuse treatment program on F yard." (Tr. Parole Hearing at 59-60; Pet. Ex. C at 6.) The psychologist further opined that:

> Mr. Dyer's involvement in Breaking Barriers, AA, NA, other self-help groups, and the Peer Mentoring with the Walden Hosue Program demonstrates his willingness to take his life in a positive direction. He has Graphic Arts certificates and his hope of becoming a Drug and Alcohol Counselor suggests that he is working to improve the quality of his life for the better. Since his last BPT hearing, Mr. Dyer has earned several certificates of completion in Anger Management Groups, NA, AA, and Breaking Barriers Groups.

(Pet. Ex. C at 7.) This conclusion is further support by the parole plans presented by Petitioner, which included his acceptance into Walden House if released and his contact with an Alcoholics Anonymous program in his proposed parole area. (Tr. Parole Hearing at 74-76, 78-79). In light of these facts, the Court finds no evidence of current dangerousness in the psychological report or Petitioner's lack of participation in Alcoholics Anonymous.

   *C.     Appropriate Remedy*

   Respondent contends that the appropriate remedy for a violation of Petitioner's due process right is a new review by the Board, citing to *Benny v. United States Parole Commission*, 295 F.3d 977, 984-85 (9th Cir. 2002) in support of this contention. (Resp't Answer at 3:12.)

   The Ninth Circuit has expressly rejected this argument, stating that, "[f]ederal courts have the latitude to resolve a habeas corpus petition as law and justice require.' [Citation] Ordering the release of a prisoner is well within the range of remedies available to federal habeas courts." *Pirtle*, __ F.3d __, 2010 WL 2732888, *8 (quoting 28 U.S.C. § 2243)*; see also Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005) (stating that federal courts "have a fair amount of flexibility in fashioning specific habeas relief"); *Sanders v. Ratelle*, 21 F.3d 1446, 1461 (9th Cir. 1994) (noting that federal habeas court is vested with the largest power to control and direct the form of judgment to be entered); *Milot v. Haws*, 628 F. Supp. 2d 1152, 1156 (C.D. Cal. 2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)("[F]ederal habeas courts have 'broad discretion in conditioning a judgment granting habeas relief' and in 'dispos[ing] of habeas corpus matters 'as law and justice require'"). Furthermore, as noted by the California Court of Appeal where "the prisoner was not lawfully in custody during the nine years following his original parole date because the rescission of that date was not supported by 'some evidence.' [citation] *The prisoner was therefore entitled to a credit of this unlawful custody time against his three-year parole period*." *In re Bush*, 161 Cal. App. 4th 133, 144-45 (2008) (emphasis added). Thus, the Court recommends that Petitioner be credited for the time he has unlawfully served; namely, the time he has served as a result of the violation of his constitutional rights.

                              **RECOMMENDATION**

   Accordingly, in accordance with the above, IT IS HEREBY RECOMMEND that:

   1.     The petition for writ of habeas corpus be GRANTED;

   2.     The Clerk of Court be directed to enter judgement for Petitioner;

   3.     Judgment be entered granting a writ of habeas corpus as follows: The Board shall find Petitioner suitable for parole at a hearing to be held within 30 days of the order adopting this decision, unless new evidence of his conduct in prison or change in

mental status subsequent to the February 2007 parole hearing is introduced and is sufficient to support a finding that Petitioner currently poses an unreasonable risk of danger to society if released on parole. In the absence of any such new evidence showing Petitioner's current dangerousness, the Board shall calculate a prison term and release date for Petitioner in accordance with California law. Further, if the release date already has passed, Respondent shall, within ten (10) days of the Board's hearing, release Petitioner from custody. With respect to his presumptive period of parole, Petitioner is to be credited for any time that has lapsed since the release date calculated by the Board or when a finding of suitability at the November 2006 parole consideration hearing would have become final pursuant to California Penal Code sections 3041(b) and 3041.2(a)), whichever is later.

This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) *court* days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   July 28, 2010**              **/s/ John M. Dixon**
                                        UNITED STATES MAGISTRATE JUDGE